UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

COMMODITY FUTURES TRADING COMMISSION,

Plaintiff,

v. Case No.: 2:20-cv-503-JES-NPM

THE ALISTA GROUP, LLC, MARVIN W COURSON, III, CHRISTOPHER A KERTATOS and LUIS M PINEDA PALACIOS,

Defendants.

---

# JUDGMENT IN A CIVIL CASE

**Decision by Court.** This action came before the Court and a decision has been rendered.

**IT IS ORDERED AND ADJUDGED** pursuant to this Court's Consent Order of March 1, 2022, the parties' Unopposed Motion to Approve Consent Judgment for Permanent Injunction, Restitution, Civil Monetary Penalty and Other Equitable Relief Against Defendant Christopher A. Kertatos, is GRANTED and the Consent Decree is APPROVED. Judgment is entered subject to the terms of the Consent Order which is attached.

March 3, 2022

ELIZABETH M. WARREN,
CLERK

s/JC, Deputy Clerk

# CIVIL APPEALS JURISDICTION CHECKLIST

1. <u>Appealable Orders</u>: Courts of Appeals have jurisdiction conferred and strictly limited by statute:

(a) **Appeals from final orders pursuant to 28 U.S.C. Section 1291**: Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C. Section 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." <u>Pitney Bowes, Inc. V. Mestre</u>, 701 F.2d 1365, 1368 (11th Cir. 1983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. Section 636(c).

(b) **In cases involving multiple parties or multiple claims**, a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b), <u>Williams v. Bishop</u>, 732 F.2d 885, 885-86 (11th Cir. 1984). A judgment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. <u>Budinich v. Becton Dickinson & Co.</u>, 486 U.S. 196, 201, 108 S. Ct. 1717, 1721-22, 100 L.Ed.2d 178 (1988); <u>LaChance v. Duffy's Draft House, Inc.</u>, 146 F.3d 832, 837 (11th Cir. 1998).

(c) **Appeals pursuant to 28 U.S.C. Section 1292(a)**: Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions..." and from "[i]nterlocutory decrees...determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

(d) **Appeals pursuant to 28 U.S.C. Section 1292(b) and Fed.R.App.P.5:** The certification specified in 28 U.S.C. Section 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

(e) **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: <u>Cohen V. Beneficial Indus. Loan Corp.</u>, 337 U.S. 541,546,69 S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); <u>Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc.</u>, 890 F. 2d 371, 376 (11th Cir. 1989); <u>Gillespie v. United States Steel Corp.</u>, 379 U.S. 148, 157, 85 S. Ct. 308, 312, 13 L.Ed.2d 199 (1964).

2. <u>Time for Filing:</u> The timely filing of a notice of appeal is mandatory and jurisdictional. <u>Rinaldo v. Corbett</u>, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P.4(a) and (c) set the following time limits:

(a) **Fed.R.App.P. 4(a)(1)**: A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD - no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

(b) **Fed.R.App.P. 4(a)(3)**: "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

(c) **Fed.R.App.P.4(a)(4)**: If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

(d) **Fed.R.App.P.4(a)(5) and 4(a)(6)**: Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

(e) **Fed.R.App.P.4(c)**: If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. Section 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3. <u>Format of the notice of appeal</u>: Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. <u>See also</u> Fed.R.App.P. 3(c). A <u>pro se</u> notice of appeal must be signed by the appellant.

4. <u>Effect of a notice of appeal</u>: A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).

**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| **COMMODITY FUTURES TRADING COMMISSION,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**THE ALISTA GROUP, LLC, MARVIN W. COURSON III, CHRISTOPHER A. KERTATOS, AND LUIS M. PINEDA PALACIOS, a/k/a LUIS PINEDA,**<br><br>**Defendants.** | **Case No. 2:20-cv-00503-JES-NPM** |

**CONSENT ORDER FOR PERMANENT INJUNCTION, RESTITUTION, CIVIL MONETARY PENALTY, AND OTHER EQUITABLE RELIEF AGAINST DEFENDANT CHRISTOPHER A. KERTATOS**

## I. INTRODUCTION

On July 16, 2020, Plaintiff Commodity Futures Trading Commission ("Commission" or "CFTC") filed a Complaint against Defendants The Alista Group LLC ("Alista"), Marvin W. Courson III ("Courson"), Christopher A. Kertatos ("Kertatos"), and Luis M. Pineda Palacios, a/k/a Luis Pineda ("Pineda"), seeking injunctive and other equitable relief, as well as the imposition of restitution and civil monetary penalties, for violations of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1-26 (2018).

## II. CONSENTS AND AGREEMENTS

To effect settlement of all charges alleged in the Complaint against him without a trial on the merits or any further judicial proceedings, Kertatos:

1. Consents to the entry of this Consent Order for Permanent Injunction, Restitution, Civil Monetary Penalty, and Other Equitable Relief Against Defendant Christopher A. Kertatos ("Consent Order");

2. Affirms that he has read and agreed to this Consent Order voluntarily, and that no promise, other than as specifically contained herein, or threat, has been made by the Commission or any member, officer, agent or representative thereof, or by any other person, to induce consent to this Consent Order;

3. Acknowledges service of the summons and Complaint;

4. Admits the jurisdiction of this Court over him and the subject matter of this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2018), and pursuant to 28 U.S.C. §§ 1331 and 1345 (2018);

5. Admits the jurisdiction of the Commission over the conduct and transactions at issue in this action pursuant to the Act, 7 U.S.C. §§ 1-26 (2018);

6. Admits that venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2018);

7. Waives:

(a) Any and all claims that he may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2018) and 28 U.S.C. § 2412 (2018), and/or the rules promulgated by the Commission in conformity therewith, Part 148 of the Regulations, 17 C.F.R. pt. 148 (2021), relating to, or arising from, this action;

(b) Any and all claims that he may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, tit. II, §§ 201-253, 110 Stat. 847,

857-74 (1996) (codified as amended at 28 U.S.C. § 2412 and in scattered sections of 5 U.S.C. and 15 U.S.C.), relating to, or arising from, this action;

(c) Any claim of Double Jeopardy based upon the institution of this action or the entry in this action of any order imposing a civil monetary penalty or any other relief, including this Consent Order; and

(d) Any and all rights of appeal from this action;

8. Consents to the continued jurisdiction of this Court over him for the purpose of implementing and enforcing the terms and conditions of this Consent Order and for any other purpose relevant to this action, even if Kertatos now or in the future resides outside the jurisdiction of this Court;

9. Agrees that he will not oppose enforcement of this Consent Order on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and hereby waives any objection based thereon;

10. Agrees that neither he nor any of his agents or employees under his authority or control shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint, or creating or tending to create the impression that the Complaint and/or this Consent Order is without a factual basis; provided, however, that nothing in this provision shall affect his: (a) testimonial obligations; or (b) right to take legal positions in other proceedings to which the Commission is not a party;

11. Agrees that he shall comply with this Consent Order and shall undertake all steps necessary to ensure that all of his agents and/or employees under his authority or control understand and comply with this Consent Order;

12. Consents to the entry of this Consent Order, without admitting or denying the allegations of the Complaint or the Findings of Fact and Conclusions of Law in this Consent Order, except as to jurisdiction and venue, which he admits;

13. Consents to the use of the findings and conclusions in this Consent Order in this proceeding and in any other proceeding brought by the Commission or to which the Commission is a party or claimant, and agrees that they shall be taken as true and correct and be given preclusive effect therein, without further proof;

14. Does not consent, however, to the use of this Consent Order, or the findings and conclusions herein, as the sole basis for any other proceeding brought by the Commission or to which the Commission is a party, other than a proceeding in bankruptcy or receivership, or a proceeding to enforce the terms of this Order;

15. Agrees to provide immediate notice to this Court and the Commission by certified mail, in the manner required by Paragraph 47 of Part VI of this Consent Order, of any bankruptcy proceeding filed by, on behalf of, or against him, whether inside or outside the United States; and

16. Agrees that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy against Kertatos in any other proceeding.

## III. FINDINGS AND CONCLUSIONS

The Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason for delay. The Court therefore directs the entry of the following Findings of Fact, Conclusions of Law, permanent injunction and equitable relief pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2018), as set forth herein. The findings and conclusions in this Consent Order are not binding on any other party to this action.

**THE COURT HEREBY FINDS:**

**A. FINDINGS OF FACT**

**The Parties to This Consent Order**

17. **Plaintiff Commodity Futures Trading Commission** is an independent federal regulatory agency that is charged by Congress with administering and enforcing the Act and the Regulations.

18. **Defendant Christopher A. Kertatos** is an individual who resides in Port St. Lucie, Florida. Kertatos has never been registered with the CFTC.

**Defendant Misappropriated Customer Funds**

19. From at least July 2016 through at least January 2018 (the "Relevant Period"), Alista, by and through the actions of its employees and agents, including but not limited to, Kertatos, offered to enter into, and conducted an office or business in the United States for the purpose of soliciting or accepting orders from retail customers for contracts for the purchase or sale of precious metals on a leveraged or financed basis ("leveraged precious metals transactions").

20. During the Relevant Period, Alista, by and through the actions of its employees and agents, including but not limited to, Kertatos, solicited and accepted at least $890,500 from at least nineteen customers. Of this amount, $639,500 was sent by customers through checks or wire transfers directly to Alista's bank accounts ("Alista Accounts"). In addition to those customers who sent cash to Alista, at least one customer sent Alista numismatic coins as payment for his transactions. These coins were sent to Alista with the intention that they would be sold by Alista on behalf of the customer and the proceeds of such sale would be used to purchase leveraged precious metals for the customer's account.

21. Kertatos was an authorized signatory on several Alista Accounts into which customer funds were deposited. During the Relevant Period, Kertatos misappropriated $69,988 from these accounts through signed cash withdrawal tickets, checks made out to cash, and checks made out to himself. None of the money obtained by Kertatos in this manner was used for the purchase or storage of precious metals on behalf of Alista's customers.

22. In addition, Kertatos used individual and/or corporate bank accounts under his personal control to accept Alista customer funds and then misappropriated those funds to pay for personal and other expenses unrelated to leveraged precious metals transactions on behalf of Alista's customers.

23. Specifically, Kertatos received a total of $79,500 from Alista Accounts into a bank account maintained in the name of Sirap Global, Inc. ("Sirap"), a company of which Kertatos was the incorporator and President. Of this amount, Kertatos subsequently returned $12,000 to Alista. The remaining $67,500 was either withdrawn by Kertatos via ATM withdrawals, used by Kertatos to pay personal expenses, including payments for travel, hotels, and restaurants, or used to make payments to certain Alista employees. None of this money was used for the purchase or storage of precious metals on behalf of Alista's customers.

24. Kertatos also took certain coins which had been sent to Alista by a customer for the purpose of purchasing leveraged precious metals and sold them to a coin and jewelry exchange for $173,500. Of this amount, Kertatos deposited $120,000 into his personal bank account. Kertatos subsequently sent $36,000 of the $120,000 to Alista. The remaining $84,000 was either withdrawn by Kertatos via ATM withdrawals or used by Kertatos to pay personal expenses, including purchases at restaurants, hotels, airlines, and supermarkets.

25. Kertatos deposited $53,500 of the money received from the coin and jewelry exchange into his Sirap bank account. Of this amount, Kertatos sent $33,000 to a straw account established at a Cayman Islands precious metals dealer in the name of a foreign individual who was an acquaintance of Kertatos. This individual was not the individual whose coins had been sold by Kertatos, was not a customer of Alista, and had never sent any money to Alista.

26. The remaining $20,500 of the money deposited into the Sirap bank account was either withdrawn by Kertatos via ATM withdrawals, used by Kertatos to pay personal expenses, including payments for travel, hotels, and restaurants, or used to make payments to certain Alista employees. None of this money was used for the purchase or storage of precious metals on behalf of Alista's customers.

## B. CONCLUSIONS OF LAW

### Jurisdiction and Venue

27. The Court possesses jurisdiction pursuant to 28 U.S.C. § 1331 (2018) (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (2018) (providing that U.S. district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress). The Commission has jurisdiction over the transactions at issue in this case pursuant to Section 2(c)(2)(D) of the Act, 7 U.S.C. § 2(c)(2)(D) (2018).

28. Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2018), because Kertatos resided in this jurisdiction during the Relevant Period and certain transactions, acts, and practices alleged in the Complaint occurred, are occurring, and/or are about to occur within this District.

**Violations of Section 4b(a)(2)(A) and (C) of the Act, 7 U.S.C. § 6b(a)(2)(A) and (C) (2018)**

29. Section 4b(a)(2)(A) and (C) of the Act, 7 U.S.C. § 6b(a)(2)(A) and (C) (2018) provides, in relevant part, that it is unlawful:

> [F]or any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, or swap, that is made, or to be made, for or on behalf of, or with, any other person, other than on or subject to the rules of a designated contract market —
>
> (A) to cheat or defraud or attempt to cheat or defraud the other person . . . or . . .
> (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for or, in the case of paragraph (2), with the other person . . . .

30. Pursuant to Section 2(c)(2)(D)(iii) of the Act, 7 U.S.C. § 2(c)(2)(D)(iii) (2018), the leveraged precious metals transactions engaged in by Alista are subject to 7 U.S.C. § 6b(a)(2)(A) and (C) (2018) as if they are contracts of sale of a commodity for future delivery.

31. By the conduct described above, Kertatos cheated and defrauded, or attempted to cheat and defraud, and willfully deceived, or attempted to deceive, customers by misappropriating their funds in connection with leveraged precious metals transactions in violation of 7 U.S.C. § 6b(a)(2)(A) and (C).

**Need for Injunction**

32. Unless restrained and enjoined by this Court, there is a reasonable likelihood that Kertatos will continue to engage in the acts and practices alleged in the Complaint and in similar acts and practices in violation of the Act.

## IV. PERMANENT INJUNCTION

**IT IS HEREBY ORDERED THAT:**

33. Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2018), Kertatos is permanently restrained, enjoined, and prohibited from, directly or indirectly, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, or swap, that is made, or to be made, for or on behalf of, or with, any other person, other than on or subject to the rules of a designated contract market: (1) cheating or defrauding or attempting to cheat or defraud the other person; or (2) willfully deceiving or attempting to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for or with the other person, in violation of Section 4b(a)(2)(A) and (C) of the Act, 7 U.S.C. § 6b(a)(2)(A) and (C) (2018).

34. Kertatos is also permanently restrained, enjoined, and prohibited from directly or indirectly:

(a) Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2018));

(b) Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2021)), for his own personal account or for any account in which he has a direct or indirect interest;

(c) Having any commodity interests traded on his behalf;

(d) Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

(e) Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

(f) Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such

registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2021); and/or

(g) Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2021)), agent or any other officer or employee of any person (as that term is defined in Section 1a(38) of the Act, 7 U.S.C. § 1a(38) (2018)), registered, exempted from registration or required to be registered with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2021).

## V. RESTITUTION AND CIVIL MONETARY PENALTY

### A. Restitution

35. Kertatos shall pay restitution in the amount of two hundred seventy-four thousand, nine hundred eighty-eight dollars ($274,988) ("Restitution Obligation"), representing the Alista customer losses that he caused through misappropriation of Alista customer funds in connection with such violations, plus post-judgment interest. If the Restitution Obligation is not paid immediately, post-judgment interest shall accrue on the Restitution Obligation beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961 (2018). Kertatos's Restitution Obligation shall be joint and several with the restitution order imposed on Alista by this Court's Opinion and Order of March 2, 2021 (Dkt. #31).

36. To effect payment of the Restitution Obligation and the distribution of any restitution payments to Alista customers by Kertatos, the Court appoints the National Futures Association ("NFA") as Monitor ("Monitor"). The Monitor shall receive restitution payments from Kertatos and make distributions as set forth below. Because the Monitor is acting as an officer of this Court in performing these services, the NFA shall not be liable for any action or inaction arising from NFA's appointment as Monitor, other than actions involving fraud.

37. Kertatos shall make Restitution Obligation payments, and any post-judgment interest, under this Consent Order to the Monitor in the name "Christopher A. Kertatos Restitution

Fund" and shall send such Restitution Obligation payments by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's check, or bank money order, to the Office of Administration, National Futures Association, 300 South Riverside Plaza, Suite 1800, Chicago, Illinois 60606, under cover letter that identifies the paying Defendant and the name and docket number of this proceeding. Kertatos shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

38. The Monitor shall oversee the Restitution Obligation and shall have the discretion to determine the manner of distribution of such funds in an equitable fashion to Alista Customers identified by the Commission or may defer distribution until such time as the Monitor deems appropriate. In the event that the amount of Restitution Obligation payments to the Monitor are of a *de minimis* nature such that the Monitor determines that the administrative cost of making a distribution to eligible customers is impractical, the Monitor may, in its discretion, treat such restitution payments as civil monetary penalty payments, which the Monitor shall forward to the Commission following the instructions for civil monetary penalty payments set forth in Part V. B. below.

39. Kertatos shall cooperate with the Monitor as appropriate to provide such information as the Monitor deems necessary and appropriate to identify the Alista customers to whom the Monitor, in its sole discretion, may determine to include in any plan for distribution of any Restitution Obligation payments. Kertatos shall execute any documents necessary to release funds that he has in any repository, bank, investment or other financial institution, wherever located, in order to make partial or total payment toward the Restitution Obligation.

40. The Monitor shall provide the Commission at the beginning of each calendar year with a report detailing the disbursement of funds to Alista customers during the previous year. The Monitor shall transmit this report under a cover letter that identifies the name and docket number of this proceeding to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

41. The amounts payable to each Alista customer shall not limit the ability of any Alista customer from proving that a greater amount is owed from Kertatos or any other person or entity, and nothing herein shall be construed in any way to limit or abridge the rights of any participant that exist under state or common law.

42. Pursuant to Rule 71 of the Federal Rules of Civil Procedure, each Alista customer who suffered a loss is explicitly made an intended third-party beneficiary of this Consent Order and may seek to enforce obedience of this Consent Order to obtain satisfaction of any portion of the restitution that has not been paid by Kertatos to ensure continued compliance with any provision of this Consent Order and to hold Kertatos in contempt for any violations of any provision of this Consent Order.

43. To the extent that any funds accrue to the U.S. Treasury for satisfaction of Kertatos' Restitution Obligation, such funds shall be transferred to the Monitor for disbursement in accordance with the procedures set forth above.

**B. Civil Monetary Penalty**

44. Kertatos shall pay a civil monetary penalty in the amount of two hundred seventy-four thousand, nine hundred eighty-eight dollars ($274,988) ("CMP Obligation"), plus post-judgment interest. Post-judgment interest shall accrue on the CMP Obligation beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961 (2018).

45. Kertatos shall pay his CMP Obligation and any post-judgment interest by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

MMAC/ESC/AMK326
Commodity Futures Trading Commission
Division of Enforcement
6500 S. MacArthur Blvd.
HQ Room 181
Oklahoma City, OK 73169
(405) 954-6569 office

9-AMC-AR-CFTC@faa.gov

If payment by electronic funds transfer is chosen, Kertatos shall contact 9-AMC-AR-CFTC@faa.govat the address above to receive payment instructions and shall fully comply with those instructions. Kertatos shall accompany payment of the CMP Obligation with a cover letter that identifies Kertatos and the name and docket number of this proceeding. Kertatos shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

**C. Provisions Related to Monetary Sanctions**

46. Partial Satisfaction: Acceptance by the Commission or the Monitor of any partial payment of Kertatos' Restitution Obligation or CMP Obligation shall not be deemed a waiver of his obligation to make further payments pursuant to this Consent Order, or a waiver of the Commission's right to seek to compel payment of any remaining balance.

## VI. MISCELLANEOUS PROVISIONS

47. Notice: All notices required to be given by any provision in this Consent Order shall be sent certified mail, return receipt requested, as follows:

Notice to Commission:

Rick Glaser
Deputy Director
Commodity Futures Trading Commission
1155 21st Street, N.W.
Washington, D.C. 20581

Notice to Defendant Christopher A. Kertatos:

Christopher A. Kertatos
150 SE Duval Ave
Port St Lucie, FL 34983

All such notices to the Commission shall reference the name and docket number of this action.

63. Change of Address/Phone: Until such time as Kertatos satisfies in full his Restitution Obligation and CMP Obligation as set forth in this Consent Order, Kertatos shall provide written notice to the Commission by certified mail of any change to his telephone number and mailing address within ten calendar days of the change.

64. Entire Agreement and Amendments: This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto to date. Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless: (a) reduced to writing; (b) signed by all parties hereto; and (c) approved by order of this Court.

65. Invalidation: If any provision of this Consent Order, or if the application of any provision or circumstance, is held invalid, then the remainder of this Consent Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

66. Waiver: The failure of any party to this Consent Order or of any customer at any time to require performance of any provision of this Consent Order shall in no manner affect the right of the party or customer at a later time to enforce the same or any other provision of this Consent Order. No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

67. Waiver of Service, and Acknowledgement: Kertatos waives service of this Consent Order and agrees that entry of this Consent Order by the Court and filing with the Clerk of the Court will constitute notice to Kertatos of its terms and conditions. Kertatos further agrees to provide counsel for the Commission, within thirty (30) days after this Consent Order is filed with the Clerk of Court, with an affidavit or declaration stating that he has received and read a copy of this Consent Order.

68. Continuing Jurisdiction of this Court: This Court shall retain jurisdiction of this action to ensure compliance with this Consent Order and for all other purposes related to this action, including any motion by Kertatos to modify or for relief from the terms of this Consent Order.

69. Injunctive and Equitable Relief Provisions: The injunctive and equitable relief provisions of this Consent Order shall be binding upon Kertatos, upon any person under his authority or control, and upon any person who receives actual notice of this Consent Order, by personal service, e-mail, facsimile or otherwise insofar as he or she is acting in active concert or participation with Kertatos.

70. Counterparts and Facsimile Execution: This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall

become effective when one or more counterparts have been signed by each of the parties hereto and delivered (by facsimile, e-mail, or otherwise) to the other party, it being understood that all parties need not sign the same counterpart. Any counterpart or other signature to this Consent Order that is delivered by any means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order.

71. Contempt: Kertatos understands that the terms of the Consent Order are enforceable through contempt proceedings, and that, in any such proceedings he may not challenge the validity of this Consent Order.

72. Agreements and Undertakings: Keratos shall comply with all of the undertakings and agreements set forth in this Consent Order.

There being no just reason for delay, the Clerk of the Court is hereby ordered to enter Judgment by attaching this *Consent Order for Permanent Injunction, Restitution, Civil Monetary Penalty, and Other Equitable Relief Against Defendant Christopher A. Kertatos* as the Judgment without further notice.

**IT IS SO ORDERED** on this _1st_ day of March 2022.

John E. Steele

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Case 2:20-cv-00503-JES-NPM Document 45 Filed 03/01/22 Page 17 of 17 PageID 608

CONSENTED TO AND APPROVED BY:

Christopher A. Kertatos
*Pro se*

Date: 11/27/2021

Alan Edelman
Senior Trial Attorney
Commodity Futures Trading Commission
1155 21st Street, N.W.
Washington, D.C. 20581
Telephone: (202) 418-5000
Facsimile: (202) 418-5523

Date 2/28/22